THELMA C. CONARD, ADMINISTRATRIX OF THE ESTATE OF ROBERT LEE CONARD, DECEASED v. MILLER MOTOR EXPRESS, INC.

(Filed 13 October, 1965.)

**1. Courts § 20—**

In an action instituted in this State to recover for injuries sustained in a collision occurring in another state, the substantive law of such other state and the procedural law of this State control.

**2. Automobiles §§ 26, 41b— Motorist may drive at less than minimum speed when necessary for safe operation of vehicle.**

Plaintiff's evidence tended to show that his intestate was killed when he collided with the rear of a truck being operated at less than 40 miles per hour, the minimum posted speed on the highway in South Carolina where the accident occurred, S. C. Code § 46-371. The evidence further tended to show that a tire had blown out on one dual wheel of defendant's vehicle, that the shoulders of the road at the place were too narrow to permit the tire to be changed in safety, and that the driver was proceeding at a speed of 30 to 35 miles per hour to the bottom of the hill where there was space and opportunity to make the necessary repairs. There was expert testimony that if a blowout occurs on a dual-wheel tire it is standard procedure not to travel above 30 miles per hour to obviate heat which might produce another blowout. *Held:* The evidence discloses that the operation of defendant's truck came within the proviso of the South Carolina statute that a motorist should not drive at less than the minimum posted speed "except when reduced speed is necessary for the safe operation of the vehicle", and therefore the evidence tends to show no violation of the statute, and nonsuit was properly entered.

APPEAL by plaintiff from *Farthing, J.*, April, 1965, Civil Session, GASTON Superior Court.

This civil action was instituted by the personal representative of Robert Lee Conard to recover damages for his alleged wrongful death. The pleadings and the evidence disclose that the plaintiff's intestate was an employee of Beaunit Mills, Inc. A few minutes after midnight on December 26, 1961, he was asleep in his employer's 1958 Model Mack trailer-tractor unit which at the time was being driven southwardly on U. S. 85 by his co-employee, James Robert Neely.

U. S. 85 is a four-lane, dual Interstate highway. The two east lanes, each 11 or 12 feet wide, were intended for north-bound traffic. Across a grass median were two lanes of equal width for south-bound traffic. As the Beaunit unit proceeded southwardly down a long hill near Gaffney, South Carolina, it ran into the rear of a partially disabled tractor-trailer owned by Miller Motor Express and being operated at the time by Miller's agent, Elbert Lewis King. King's speed was 30-35 miles per hour. The posted minimum speed at the time and place of the accident was 40 miles per hour. The rear-end collision occurred about half a mile below the crest of a hill. The plaintiff contends that Neely was driving at a lawful rate of speed, ran upon the dimly lighted truck which was violating the minimum speed law, of which violation he did not have notice sufficient to enable him to decrease his speed and prevent running into the rear of the Miller trailer. As a result of the collision, the Beaunit trailer-tractor units separated, plunged over the side of the highway, killing both the driver, Neely, and the plaintiff's intestate.

By answer, the defendant denied all negligent acts which the plaintiff charged against its agent. By way of further defense, it alleged and offered evidence tending to show that just before the collision its driver, King, discovered his vehicle was not operating properly. Immediately he pulled out onto the shoulder of the highway, to his right, where he ascertained the tire on one of the dual wheels had blown. The shoulder was approximately the same width as his trailer and offered insufficient room for removal of the wheel and the repair of the blown tire. Thereupon, he turned the red blinker and all other lights on the tractor-trailer and proceeded cautiously down the highway in the extreme right-hand lane at a speed of about 30-35 miles per hour, intending to stop at the bottom of the hill where there was space and opportunity to make the necessary repairs. His blinkers and other lights were fully visible to all traffic overtaking him. The driver of the Beaunit unit could and should have seen these blinkers and marginal lights on his truck for at least 1,000 feet before crashing into the trailer.

The plaintiff's witness, Bruce Love of the State Highway Patrol, testified that he saw the Miller truck as it pulled onto the highway from the shoulder; that the shoulder was approximately eight feet wide and the truck about the same width. He passed just after King had pulled off the shoulder. "I did not have any trouble getting around it at all. . . . I couldn't say . . . how fast he was going. All the trailer rear lights were on. As far as I could see he was going down the hill all right. I did not stop him or say anything to him. . . . I would say that, as you come down the hill from the crest . . . the point of the accident would be about five-tenths of a mile. There is no physical obstruction to the vision of an on-coming or overtaking motorist for about five-tenths of a mile, that is to the impact. . . . This rest area (at the foot of the hill) is a safe place for a vehicle to pull completely off the road."

Mr. Nichols, transportation manager of Beaunit, a plaintiff's witness, testified on cross-examination that if a blow-out occurs on a dual wheel, "It is preferable not to go above about thirty miles per hour because speed produces heat and heat produces another blow-out, and it has the weight of the one single tire that should be borne by the two. It is standard procedure to go on down the road until you get your truck off the road if there is a safe place available."

At the close of the evidence, the court, on defendant's motion, entered compulsory nonsuit. From the judgment dismissing the action, the plaintiff appealed.

*Henry M. Whitesides for plaintiff appellant.*
*Mullen, Holland & Harrell by James Mullen for defendant appellees.*

HIGGINS, J.   This cause grew out of a rear-end motor vehicle collision in South Carolina. The substantive law of that State controls. The procedural law of North Carolina controls. *Childress v. Motor Lines*, 235 N.C. 522, 70 S.E. 2d 558.

The plaintiff's counsel argues here that the evidence made out a case of actionable negligence under the South Carolina law in that it shows the defendant's agent, King, was operating its tractor-trailer unit on U. S. Highway 85 in South Carolina at a speed of 30-35 miles per hour at a place where the minimum speed for motor vehicles had been established at 40 miles per hour. The evidence is sufficient to disclose that the South Carolina Highway authorities had posted notice of a 40-mile per hour speed limit at the place where the accident occurred. However, the statute, § 46-372, South Carolina Code, under which the Highway authorities posted the minimum, carries an excep-

tion which makes the minimum inapplicable under the circumstances disclosed on this occasion.

"No person shall drive a motor vehicle at such slow speed as to impede or block the normal and reasonable movement of traffic, *except when reduced speed is necessary for the safe operation or in compliance with law.* (emphasis added.) Whenever the Department determines on the basis of an engineering and traffic investigation that slow speeds on any part of the State Highway consistently impede the normal and reasonable movement of traffic, the Department may determine and declare a minimum speed limit below which no person shall drive a vehicle *except when necessary for safe operation or in compliance with law,* when appropriate signs giving notice thereof are erected along the part of the highway for which a minimum speed is established." (emphasis added.)

The plaintiff's evidence discloses that the blow-out on one of the dual wheels of the defendant's unit occurred at a place where the shoulder space (on a fill) equaled the trailer width of about eight feet. King, the driver, testified he had insufficient room to take off a wheel and make repairs. One of the plaintiff's witnesses, a transportation expert, stated that standard procedure required that the unit be driven to a place of safety (at the foot of the hill) for the repairs and that safety required that speed should not exceed 30-35 miles per hour because the one tire carrying the load intended for two might blow out because of the heat generated by the extra weight it carried. Exactly this situation is taken into account by the provision of the statutory limitation: "Except when reduced speed is necessary for safe operation." The minimum speed, therefore, must give way to the superior necessity for safe driving.

The stated objection of the South Carolina Uniform Act is to prevent such slow speeds as "impedes the normal and reasonable movement of traffic." The purpose is not to require the driver of a partially disabled truck to surrender the road at all events to a following truck driver who is in a hurry. The Supreme Court of South Carolina, in *Bell v. Atlantic Coast Line Railroad,* 202 S.C. 160, 24 S.E. 2d 177, has stated the rule:

> "An action for negligence based upon an alleged violation of a statute or ordinance cannot be maintained where it appears that the statute or ordinance was enacted or ordained for a purpose wholly different from that of preventing the injury of which complaint is made. To afford a right of action for injury from the violation of a statute or ordinance the complainant's injury must have been such as the statute or ordinance was intended to pre-

vent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

For the reasons herein discussed, we hold the plaintiff's evidence fails to make out a case of actionable negligence under South Carolina law. The judgment of nonsuit is

Affirmed.